NORTH CAROLINA ) IN THE GENERAL COURT OF JUSTICE
) SUPERIOR COURT DIVISION
GUILFORD COUNTY FILED ) 18 CVS 9627

2019 APR -8 A 8:37

MADISON BESSIE KIDD, as )  APR 10 2019
Administrator of the Estate of )
EDWARD RANDALL KIDD, )
deceased, )
         Plaintiff, )
v. )  **COMPLAINT**
)
KINDRED HOSPITALS EAST, )
L.L.C., d/b/a "KINDRED )
HOSPITAL-GREENSBORO," )
)
         Defendant. )
)

The plaintiff, complaining of the defendant, alleges that:

1. The plaintiff, Madison Bessie Kidd, is a citizen and resident of Guilford County, North Carolina. She brings this action in her capacity as the duly appointed Administrator of the Estate of her father, Edward Randall Kidd, who died on December 11, 2016. At the time of his death, Edward Randall Kidd (hereinafter referred to as "Mr. Kidd") was a resident of Davidson County, North Carolina.

2. Defendant Kindred Hospitals East, L.L.C. is a limited liability company organized and existing under the laws of the State of Delaware and having its principal place of business in Louisville, Kentucky. At all times pertinent to this action, defendant Kindred Hospitals East, L.L.C. operated a long-term care hospital known as "Kindred Hospital - Greensboro" (hereinafter referred to as "Kindred Hospital") located at 2401 Southside Boulevard, Greensboro, Guilford County, North Carolina.

3. The defendant represented to the public that it had the ability to accept and care for persons with significant medical and nursing needs and that its staff and employees were properly trained, qualified and sufficient in number to care for such individuals.

## FIRST CLAIM FOR RELIEF

4. The allegations contained in the Paragraphs 1 through 3 hereinabove are re-alleged and incorporated into this First Claim for Relief by reference.

5. On April 26, 2016, Mr. Kidd was admitted to Kindred Hospital for rehabilitation following a hospitalization at The Moses H. Cone Memorial Hospital for coronary bypass surgery. Upon admission to Kindred Hospital, Mr. Kidd was 63 years old and medically stable and alert. He suffered from diabetes, renal disease and sepsis; had a diabetic ulcer on his right foot; and had a nasogastric feeding tube. Kindred Hospital's staff expected that Mr. Kidd would be ready for discharge within thirty days.

6. After admission to Kindred Hospital, Mr. Kidd's physician ordered that he be administered the following medications with sedative effects: oxycodone/acetaminophen ("Percocet"), Quetiapine Fumarate ("Seroquel") and Clonazepam ("Klonopin"). These medications all carry the risk of depressing respirations which can lead to respiratory arrest. Further, these medications have long half-lives and can "stack up," particularly in patients with kidney issues. Kindred Hospital's nursing staff was required to monitor and evaluate Mr. Kidd prior to and after administering these medications.

7. On May 1, 2016, the nursing staff at Kindred Hospital administered 50 milligrams of Seroquel to Mr. Kidd at 9:00 a.m. and at 10:07 p.m. Because Mr. Kidd became unusually sleepy, his physician ordered that the daytime dose of Seroquel be reduced to 25 milligrams.

8. At 9:45 a.m. on May 2, 2016, the nursing staff administered 50 milligrams of Seroquel to Mr. Kidd, notwithstanding his physician's order to decrease the dosage. Mr. Kidd also received 25 milligrams of Seroquel at 8:49 p.m., and 0.5 milligrams of Klonopin at 9:45 a.m., 2:06 p.m. and 8:50 p.m. on May 2, 2016.

9. On May 2, 2016, Mr. Kidd's physician ordered that the dosage of Seroquel be reduced to 25 milligrams every 12 hours and changed the order for Klonopin to 0.5 milligrams every 8 hours as needed because Mr. Kidd seemed sedated.

10. On the morning of May 3, 2016, Mr. Kidd was administered 25 milligrams of Seroquel at 9:00 a.m., 0.5 milligrams of Klonopin at 9:45 a.m., and 325 milligrams of Percocet at noon. The nursing staff did not assess the effectiveness of these medications for almost 4 hours.

11. At approximately 4:00 p.m., Mr. Kidd became obtunded and somnolent. The nursing staff did not inform his physician of this change in his condition. Upon discovery of Mr. Kidd's condition, his physician discontinued the order for 0.5 milligrams of Klonopin every 8 hours and ordered 0.25 milligrams every 12 hours. The physician also reduced the orders for Percocet to every 12 hours as needed for pain. A nurse responsible for Mr. Kidd's care acknowledged this order at 4:13 p.m.

12. At approximately 5:30 p.m. on May 3, 2016, the same nurse who acknowledged the order to reduce the amount of Percocet administered another dose of Percocet to Mr. Kidd in violation of the physician's order. Mr. Kidd became unresponsive, stopped breathing and had no pulse. A code blue was called, and cardiopulmonary resuscitation was started around 5:45 p.m. Mr. Kidd was administered Narcan to reverse the effect of excessive medication administered to him. The chest wound from his heart surgery reopened during chest compressions and began to drain fluid. His physician stopped the sedation medication, and Mr. Kidd was transferred to the Intensive Care Unit ("ICU").

13. In the ICU, Mr. Kidd was placed on a ventilator due to hypoxic respiratory failure and started on dialysis. His prognosis was guarded. He was also placed on a wound VAC to heal his chest wound.

14. On May 8, 2016, Mr. Kidd remained in critical condition. His physician told his family that they may need to discuss palliative care if his condition did not improve.

15. Mr. Kidd's condition continued to deteriorate. In September, 2016, he had a seizure.

16. On October 31, 2016, Mr. Kidd was transferred to Golden Living Center, a skilled nursing facility in Martinsville, Virginia. At the time of transfer, he had impaired speech, was incontinent and bed bound, and required extensive assistance with activities of daily living. His prognosis was poor.

17. Mr. Kidd died on December 11, 2016.

18. The defendant was negligent in its care and treatment of Mr. Kidd in that its nursing staff and other employees and agents:

    a. Failed to assess and monitor Mr. Kidd appropriately when administering psychotherapeutic and narcotic medications;

    b. Failed to administer medications to Mr. Kidd in accordance with his physicians' orders;

    c. Failed to evaluate Mr. Kidd before and after administering medications;

    d. Failed to try non-medication interventions before administering psychotherapeutic medications;

    e. Failed to communicate changes in Mr. Kidd's medications to the nursing staff in a timely manner;

3

f. Failed to provide care in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances at the time;

g. Failed to exercise reasonable care and diligence in the application of their knowledge and skill to Mr. Kidd; and

h. Failed to use their best judgment in treating Mr. Kidd.

19. The negligence of the defendant and its agents and employees as described hereinabove was a direct and proximate cause of the cardio and respiratory arrest suffered by Mr. Kidd, the deterioration of his overall condition thereafter, and his death. As the direct and proximate result of the defendant's negligence, Mr. Kidd incurred substantial medical and hospital expenses and suffered excruciating pain, discomfort and disability, and, ultimately, death.

20. At the time of his death, Mr. Kidd was entitled to bring an action against the defendant for the injuries and damages he suffered as a result of its negligence. This cause of action survives to the plaintiff.

21. The plaintiff is entitled to recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for personal injuries to Mr. Kidd.

## SECOND CLAIM FOR RELIEF

22. The allegations contained in Paragraphs 1 through 21 hereinabove are re-alleged and incorporated into this Second Claim for Relief by reference.

23. As a direct and proximate result of the defendant's negligence, Mr. Kidd incurred substantial medical and hospital expenses and suffered extreme pain and discomfort, mental anguish and death.

24. Mr. Kidd was a loving and devoted father. He was survived by his three daughters.

25. As the direct and proximate result of the negligence of the defendant as described above, Mr. Kidd's children have lost his net income and his care, assistance, society, companionship, comfort, guidance, kindly offices and advice.

26. The plaintiff is entitled to recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for the expenses for care, treatment and hospitalization incurred by Mr. Kidd as a result of the defendant's negligence and for his pain and suffering, his reasonable funeral expenses, and his present monetary value to his children.

4

## THIRD CLAIM FOR RELIEF

27. The allegations contained in Paragraphs 1 through 26 hereinabove are re-alleged and incorporated into this Third Claim for Relief by reference.

28. The defendant had a duty to the plaintiff and the public to monitor and supervise its nursing staff to ensure that its staff was competent to provide care to Mr. Kidd and provided care in accordance with the applicable standard of care.

29. The defendant committed administrative negligence as follows:

   a. By failing to implement policies to ensure that changes in physician's medication orders were effectively communicated to the nurses administering medications;

   b. By failing to provide adequate training and supervision to its nursing staff in the administration of psychotherapeutic and narcotic medications; and

   c. By failing to provide adequate staffing to meet Mr. Kidd's needs.

30. As a direct and proximate result of the defendant's administrative negligence, Mr. Kidd incurred substantial medical and hospital expenses and suffered excruciating pain, discomfort and disability, and, ultimately, death.

31. At the time of his death, Mr. Kidd was entitled to bring an action against the defendant for the injuries and damages he suffered as a result of its administrative negligence. This cause of action survives to the plaintiff.

32. The plaintiff is entitled to recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for personal injuries to Mr. Kidd.

## FOURTH CLAIM FOR RELIEF

33. The allegations contained in Paragraphs 1 through 32 hereinabove are re-alleged and incorporated into this Fourth Claim for Relief by reference.

34. As a direct and proximate result of the defendant's administrative negligence, Mr. Kidd incurred substantial medical and hospital expenses and suffered extreme pain and discomfort, mental anguish and death.

35. Mr. Kidd was a loving and devoted father. He was survived by his three daughters.

5

36. As the direct and proximate result of the administrative negligence of the defendant as described above, Mr. Kidd's children have lost his net income and his care, assistance, society, companionship, comfort, guidance, kindly offices and advice.

37. The plaintiff is entitled to recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) for the expenses for care, treatment and hospitalization incurred by Mr. Kidd as a result of the defendant's administrative negligence and for his pain and suffering, his reasonable funeral expenses, and his present monetary value to his children.

## FIFTH CLAIM FOR RELIEF

38. The allegations contained in Paragraphs 1 through 37 hereinabove are re-alleged and incorporated into this Fifth Claim for Relief by reference.

39. The acts and omissions of the defendant and its employees and agents as alleged hereinabove constitute willful and wanton conduct. These acts and omissions were undertaken in the conscious and intentional disregard of and indifference to the rights and safety of Mr. Kidd and others. The defendant, and its employees and agents, knew or should have known that these acts and omissions were reasonably likely to result in injury, damage and harm to Mr. Kidd and others.

40. The defendant's officers and managers participated in or condoned the willful and wanton conduct of their employees and agents.

41. The plaintiff is therefore entitled to recover punitive damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## RULE 9(j) COMPLIANCE AND
## MOTION FOR EXPERT QUALIFICATION RE: RULE 9(j)(2))

42. The medical care rendered by the defendant to Mr. Kidd and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina Rules of Evidence and who is willing to testify that the care provided by the defendant did not comply with the applicable standard of care.

43. If the Court later determines that the plaintiff's Rule 9(j) expert does not meet the requirements of Rule 702(b) or Rule 702(c), the plaintiff moves to have that person qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence, and the plaintiff hereby moves the Court, pursuant to Rule 9(j)(2), to so qualify that person.

6

## RESERVATION OF RIGHT TO OBJECT TO DAMAGES CAP

44. The plaintiff reserves her right to object to N.C.G.S. § 90-21.19 ("the cap on noneconomic damages") as unconstitutional in the event that the jury returns a verdict for noneconomic damages in excess of the amount of the cap.

## STATUTE OF LIMITATIONS

45. On December 3, 2018, the Honorable L. Todd Burke, Superior Court Judge, entered an Order in this action pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure extending the applicable statute of limitations to April 10, 2019.

WHEREFORE, the plaintiff prays that:

1. She have and recover compensatory damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

2. She have and recover punitive damages from the defendant in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00);

3. The costs of this action, including the plaintiff's attorney fees, be taxed against the defendant; and

4. She have recover such further relief as the Court deems proper.

The plaintiff demands a trial by jury on all issues in this action.

This the 5th day of April, 2019.

*/s/ David Pishko*
David Pishko
Attorney for Plaintiff
N.C. State Bar No. 7969
Law Office of David Pishko, P.A.
100 North Cherry Street, Suite 510
Winston-Salem, NC 27101
Telephone: (336) 310-0088
Fax: (252) 565-0471
Email: david@davidpishko.com